UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| LEGAL SEA FOODS LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>DOORDASH, INC., a California company,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CIVIL ACTION NO.<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF, LEGAL SEA FOODS, LLC, COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION AGAINST DEFENDANT, DOORDASH, INC.

Plaintiff, Legal Sea Foods, LLC, a Delaware limited liability company ("Plaintiff" or "Legals") files its Complaint and seeks a permanent injunction against Defendant, DoorDash, Inc. ("Defendant" or "DoorDash").  In support of its Complaint, Plaintiff alleges as follows:

### NATURE OF CASE

1.      This action concerns Defendant's acts of trademark infringement and false designation of origin under the Lanham Act as well as unfair and deceptive acts and practices under both state and federal laws.

### JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338 and 1367.  Plaintiff's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§1051, *et seq.*  The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§1338(b), and 1367.

3.      This Court has personal jurisdiction over Defendant, and venue is proper in the

Eastern Division of Massachusetts pursuant to 28 U.S.C. §1391(b).   Plaintiff is informed and

believes and therefore avers that Defendant operates its food delivery business throughout

Massachusetts, including the Boston area.   Further, upon information and belief, a substantial

part of the events or omissions giving rise to Plaintiff's claims occurred in Massachusetts, where

Defendant advertises and operates delivery services.   The effects of Defendant's infringing acts

occurred in the Commonwealth of Massachusetts and in the Eastern District, where Plaintiff is

located.

### THE PARTIES

4.      Plaintiff, Legal Sea Foods, LLC, is a Delaware limited liability company having

its principal place of business at One Seafood Way, Boston, Massachusetts.   Plaintiff operates a

highly recognizable restaurant group including (i) Legal Sea Foods, (ii) Legal Test Kitchen,

(iii) Legal C Bar, (iv) Legal Harborside, (v) Legal Crossing, (vi) Legal Oysteria, and (vii) Legal

on the Mystic, with thirty-three (33) locations in the United States as well as retail stores.   Legals

operates twenty-three (23) restaurants in Massachusetts and each restaurant has varying menus

and offerings.

5.      Upon information and belief, Defendant, DoorDash, Inc. is a California company,

having a principle place of business at 470 Olive Avenue, Palo Alto, California.   Defendant

provides on-demand food delivery to customers who place orders for meals at various restaurants

through a mobile app or an Internet website of DoorDash.   DoorDash is a "start-up" company

having first registered to do business in California on May 21, 2013 and then in Massachusetts as

a foreign corporation on the same date.

7267120
7267120v3

## PLAINTIFF'S BUSINESS AND MARKS

6.      Legals first opened in 1950 as a fish market in the Inman Square neighborhood of

Cambridge, Massachusetts.   The "Legal" name quickly became synonymous with quality and

freshness.  Legals' website provides, in part, its history as follows:

> In 1968, the Berkowitz family opened its first seafood restaurant,
> right next to the fish market.  The fish was simply prepared, either
> broiled or fried, and served on paper plates at communal picnic
> tables.  Despite the low-key trappings the food was second to none
> and word quickly spread.   This early success led to further
> expansion and now, six decades later with restaurants along the
> Eastern Seaboard, the family philosophy endures:   Legal Sea
> Foods in a fish company in the restaurant business. … George's
> son, Roger, has been a theme since 1992 and has expanded the
> business into new markets while maintaining the company's focus
> on its proud tradition and core values.  So when we say, "If it isn't
> fresh, it isn't Legal!," we renew a commitment that has sustained
> us for over a half-century.

7.      Legals is also an acclaimed restaurant as evidenced by the following awards and

recognitions:

a.      **Most Admired Brand and Readers' Choice:  Boston Business Journal**

**2014.**  "The Most Admired program is extremely competitive.  You can

imagine the criteria that filtered through voters' minds as they filled in the

blanks:   the quality of the companies products; their track records as

corporate citizens; and their roles in defining and reshaping the local

economy.  In a place with as many great companies, executives and brands

as Boston, reaching the top of a "most admired" list is no small thing.  In

truth, few places in the U.S. have the ability to match the branding power

of a Dunkin' Donuts, the Boston Red Sox and Legal Sea Foods.  And its

no exaggeration to say that all three brands could be part of a typical day

- 3 -

for a Bostonian:  A coffee at Dunks on the way to Fenway Park, and after the game dinner at Legal's."

b.    **"Best Seafood Restaurant" – _USA Today_, 2013.**   "Legal Sea Foods claws its way to the top!  The votes are in and seafood-loving readers have chosen their favorite place to savor the flavors of the sea.  'If it isn't fresh, it isn't Legal' is the slogan at this popular chain - stretching from Florida to Massachusetts - which has its own waterfront purity lab that inspects every delivery.  _Famed for its thick and bipartisan New England clam chowder, which has been served at the Presidential Inaugurations of all five presidents since Ronald Reagan in 1981_, it also has a huge menu of every sorts of seafood dish." – _USA Today_ (emphasis added).

c.    **"Best U.S. Airport Food" – _USA Today_, 2013.**  Legal Sea Foods (Boston Logan International Airport) Named a winner in the 10 Best Readers' Choice Awards for "Best U.S. Airport Food." – _USA Today._

d.    **"31 Best Airport Restaurants Around the World" – _USA Today_, 2012.** The Daily Meal's list of the 31 best airport restaurants around the world was carefully curated through a six-month-long nomination process. Restaurants were judged in two categories:  cuisine and style/décor/service.  From innovative menu options to plating and presentation to freshness, quality, and taste, The Daily Meal evaluated each restaurant's cuisine and only included the restaurants that were deemed to be extraordinary.  For the second category, panelists evaluated the dining experience, from the restaurant's interior and dining-room

- 4 -

ambiance to the service, voting for the restaurants that offer an unrivaled experience.  From Miami to Munich and Seattle to Singapore, there are dozens of outstanding airport restaurants, many a destination in their own right." – *USA Today*.

| Exhibit | Mark | U.S.P.T.O. Registration No. | Registration Date | Description of Services or Goods |
|---|---|---|---|---|
| 1 | Legal Sea Foods & Design | 1,060,132 | February 22, 1977 | Restaurant Services in Class 42 (U.S. CL 100) |
| 2 | Legal Sea Foods & Design | 2,033,744 | January 28, 1997 | Restaurant Services; Retail Store Services & Mail Order Services featuring seafood in Class 42 (U.S. CLS 100 & 101) |
| 3 | Legal Test Kitchen | 4,086,911 | January 17, 2012 | Restaurant Services in Class 43 (U.S. CLS 100 & 101) |
| 4 | Legal Crossing | 4,548,773 | June 10, 2014 | Restaurant & Bar Services in Class 43 (U.S. CLS 100 & 101) |
| 5 | Legal Oysteria and Design | 4,668,680 | January 6, 2015 | Restaurant Services in Class 43 (U.S. CLS 100 & 101) |

8.      Registrations for a relevant sub-set of these Registered Marks are attached hereto respectively as **Exhibits 1-5**.

7267120
7267120v3

9.      Plaintiff owns all right, title and interest in and to the Registered Marks, and has obtained Federal Trademark and Service Mark Registrations for the Registered Marks for a wide range of food and other products and services, including, *inter alia*, restaurant services, superior quality fresh fish and shell fish, clam chowders, lobster, aprons, cookbooks, wine glasses, gift cards and gift certificates.   In Massachusetts, Plaintiff has been using the Legal Sea Foods' Registered Marks beginning in 1977 until the present.

10.      The Registered Marks have been used in interstate commerce to identify and distinguish Plaintiff's products and services, and some for over three (3) decades.   They each serve as symbols of Plaintiff's quality, reputation and goodwill.

11.      Through its restaurants and online store, Plaintiff has sold and continues to sell goods including food products such as lobsters and clam chowder throughout the United States.

12.      Plaintiff makes use of its Registered Marks in interstate commerce by displaying them on product packaging, menus, signage, promotional materials, advertising materials, and its website.

13.      Plaintiff has invested millions of dollars in developing, advertising and otherwise promoting the Registered Marks in the United States in an effort to create a strong association between Plaintiff's products and services, its consumer goodwill and its Registered Marks.

14.      As a result of the care and skill exercised by Plaintiff in the conduct of its business, the high quality of its products and services offered under its Registered Marks, and the extensive advertising, sale and promotion of Plaintiff's products bearing the Registered Marks, have acquired secondary meaning throughout the United States, and the Registered Marks are widely recognized by the general consuming public of the United States as a designation that Plaintiff is the source of the goods and services bearing the Registered Marks.

- 6 -

15.     The Registered Marks are strong, arbitrary marks that warrant broad protection in both related and unrelated product and/or service classes.

16.     Since the date of First Use of the Registered Marks, Plaintiff has manifested intent to maintain exclusive ownership of the Registered Marks and to continue use of the Registered Marks in interstate commerce in connection with Plaintiff's products and services.

17.     Plaintiff has carefully monitored and policed the use of the Registered Marks and maintains tight control over the use of the Registered Marks.

## DEFENDANT'S INFRINGING ACTS

18.     Upon information and belief, Defendant is a food delivery business, which promises delivery in an hour of a variety of food items from a number of restaurants in cities throughout the United States.

19.     Plaintiff is not affiliated with Defendant's delivery business, and has never authorized either orally or in writing the Defendant to deliver its food products.

20.     Despite the fact that Defendant is in no way affiliated with Plaintiff, Defendant has advertised for a period of time that it delivers food from Plaintiff's restaurants.   In conjunction with these advertisements, Defendant's website and promotional materials featured mock Legals logos (the "Imitation Logos"), which is a colorable imitation of four (4) Plaintiff's Registered Marks.  Plaintiffs did not authorize, and would never authorize, Defendant to use the Registered Marks, or any colorable imitations of the Registered Marks.  A sampling of Defendant's promotional materials dated January 4, 2016 featuring the Imitation Logo of four (4) restaurants is attached hereto as **Exhibit 6**.

21.     Upon information and belief, the Imitation Logos are intended to, and has, confused consumers as to Defendant's authority to deliver Plaintiff's goods including food items.

- 7 -

22.     As a result of receiving customer complaints about DoorDash, Legals became aware that DoorDash had been using its Registered Marks and Imitation Logos, increasing Legals' menu prices and holding itself out as an approved delivery service for Legals.

23.     On December 7, 2015, Legals notified first DoorDash by certified letter of its unfair and deceptive practice of using Legals' Trademarks to lure customers to its website under the pretext that (a) DoorDash is an authorized agent of Legals, (b) Legals is Merchant Partner of DoorDash, (c) Legals approved the restaurant menu pricing on DoorDash's website, (d) DoorDash is properly licensed to deliver food products and goods to customers, and (e) Legals authorized DoorDash to make deliveries of food products and goods on its behalf.  A copy of the Cease and Desist Letter to DoorDash and its CEO, Tony Xu, dated December 7, 2015 is attached hereto as **Exhibit 7**.

        a.      In the December 7th letter, Legals *demanded that DoorDash cease and desist immediately* this unfair and deceptive activity.

        b.      DoorDash failed and refused to (a) respond to the Cease and Desist Letter and (b) to stop its unfair and deceptive practices.

24.     DoorDash ignored Legals' Cease and Desist Letter despite having been served with the letter by email and Federal Express at its corporate office, and also upon the Resident Agent for Service of Process in Massachusetts by registered mail, return receipt request.  A copy of the green card verifying service on the Resident Agent of the Letter on December 18, 2015 is attached hereto as **Exhibit 8**.

25.     A sampling of Defendant's promotional materials unlawfully incorporating Plaintiff's Registered Marks and then directing customers to Legals Sea Food's restaurant menu

7267120
7267120v3

is evidenced by posting dated December 30, 2015 on Defendant's website, and is attached hereto as **Exhibit 9**.

26.     DoorDash's deceptive practice of posting Legals' Restaurant Menus on its website continued as evidenced by the screen shot of DoorDash's website dated January 7, 2016 and is attached hereto as **Exhibit 10**.  This deceptive practice continued as DoorDash ignored the first Cease and Desist Letter dated December 7, 2015 that was delivered three(3) ways: by email, Federal Express, and service on the Resident Agent.

27.     On January 7, 2016, Legals served DoorDash by certified mail return receipt requested to both the CEO of DoorDash and its Resident Agent for service with a demand letter under M.G.L. Ch.93A.  A copy of the Demand Letter is attached hereto as **Exhibit 11**.

28.     Again, Legals demanded that DoorDash cease and desist using its Registered Marks and Imitation Logos and posting its menus on DoorDash's website.

29.     Defendant refused to remove the marks from its website until it was caught and then only after Plaintiff served Defendant with the demand letter under M.G.L. Ch.93A dated January 7, 2016.

30.     Defendant's unauthorized use of the Registered Marks and Imitation Logos in its marketing and advertising materials created a likelihood of consumer confusion because actual and prospective customers were lead to believe that Plaintiff has or had approved or licensed Defendant's use of its marks, or that Plaintiff is somehow affiliated or connected with Defendant or its services or has been authorized by Plaintiff to deliver Plaintiff's food products.  In fact, the Defendant knew that Plaintiff has not sponsored, licensed, or authorized its services.

7267120
7267120v3

31.     Defendant's use of Plaintiff's famous trademarks further implies and implied that Defendant not only delivers Legals' products to its customers, but that the quality and services offered by Defendant is the same as if consumers had made purchases directly from Plaintiff.

32.     Plaintiff adheres to all health and safety codes including all standards for the prevention of contamination, ensuring time and temperature relationship, food storage, and food display and service.

33.     Upon information and belief, the quality of services offered by Defendant does not at all comport with the standards that consumers expect from Plaintiff's goods and services. On further information and belief, many of DoorDash's drivers are "independent contractors and provide their own cars or bikes."

34.     Plaintiff has and had no control over the time it takes Defendant to deliver Plaintiff's goods to consumers, or over the temperature at which the goods are kept during delivery, nor over the food handling and sanitary practices of Defendant's delivery drivers.

**DOORDASH'S ACTIONS WERE CALCULATED AND WILLFUL
AS ITS BUSINESS MODEL INTENTIONALLY PRAYS
ON RESTAURANTS WITHOUT MERCHANT AGREEMENTS.**

35.     In a recent video posted on-line dated December 4, 2015 by TechCrunch, DoorDash's CEO confesses during an interview that the company makes a profit from commission agreements with restaurants (Merchant Partners) and that the drivers earn income from the delivery fee plus any tips.  The "commission" is an agreement by Merchant Partners pay DoorDash a certain percentage of the cost of the restaurant food and goods order.  DoorDash only makes money based upon its relationship with the restaurants and not the customers.

36.     To generate its valuation, attract investors, and make a profit, DoorDash's business model offers customers a list of restaurant menus plus a means to order meals and have them delivered to their door.  To purchase food products and goods from a restaurant, customers

- 10 -

provide DoorDash with a debit or credit card for payment via website or app.  Customers then place an order through DoorDash and make the required payment but they do not directly order from or pay the restaurants.  When making a payment, customers falsely assumed that DoorDash has or had a relationship with all "Merchant Restaurants" because they appear on DoorDash's website, and DoorDash provides a delivery service.

37.    DoorDash's website even has a page entitled, "*Let's Work Together, partner with DoorDash.*" This is an online application to become a Merchant Partner, and infers that every restaurant listed on its website is a Merchant Partner, however, DoorDash knew this to be untrue.

38.    DoorDash's posting of Legals' Restaurant Menus on its website actively and intentionally misrepresented to customers that DoorDash has a food products and goods delivery agreement with Legals when it did not.

39.    Consistent with its business practice, after customers pay DoorDash directly for Legals' food products and goods meals, DoorDash then places the same order with Legals. DoorDash pays Legals directly for the order and picks up the food products and goods for delivery to the customer.

40.    On information and belief, DoorDash makes and made a concerted effort <u>not</u> to notify the restaurants who are <u>not</u> Merchant Partners that a purchase is being made via DoorDash's website or phone app.

41.    On information and belief, recent reports suggest that DoorDash's training video specifically instructs delivery drivers not to use the name "DoorDash" when picking up orders from restaurants that are <u>not</u> Merchant Partners.  The drivers are further advised to <u>not</u> show or provide the restaurant receipt to the customer as DoorDash does <u>not</u> want the customer to know how much more it is charging the customer more for certain food products and goods than the

restaurant.  A copy of a November 25, 2015, Business Insider article entitled "*DoorDash, a food-delivery startup that's rumored to be raising at a $1 billion valuation, has some shady instructions for its delivery workers*" is attached hereto as **Exhibit 12**.

42.     DoorDash further instructed, on information and belief, its delivery drivers to conceal their true identity from Legals and other non-merchant partners as part of their scheme.

43.     Legals does not have nor did it ever have a Merchant Partner agreement with DoorDash.

44.     Legals has never agreed to permit DoorDash to (a) list Legals as a Merchant Partner on its website and (b) represent to Legals' customers that DoorDash is an approved delivery service.

45.     To get around the fact that Legals is and was not a Merchant Partner, and to generate a "commission [its only source of revenue per transaction]," DoorDash intentionally, deceptively, and by design increased the prices of goods and food products on Legals' Restaurant menus, retained the difference as its "commission" and then pass the increased costs onto the customer.

46.     In fact, DoorDash's website contains misleading information about the increase menu prices, and provides as follows:  "To help pay part of their commission, some merchants have decided to add a slight increase to certain menu items.  (Menu pricing)."  This is intended to and deceived Legals' customers into believing that the inflated prices for menu items was Legals' idea, when DoorDash knew that Legals had not approved such pricing.  A copy of DoorDash web-page entitled "Menu Pricing" dated December 16, 2015 is attached hereto as **Exhibit 13**.

47.     This unfair and deceptive acts and conduct is a pattern of activity and behavior of DoorDash and is by no means an isolated incident.  On November 6, 2015, In-N-Out Burgers filed suit against DoorDash in federal court in California on nearly identical claims of DoorDash hold itself out as an approved delivery service.  A copy of the In-N-Out Docket Sheet is attached hereto as **Exhibit 14**.

48.     Upon information and belief, Defendant's delivery vehicles are cars or bicycles owned and operated by the drivers, and are not designed for the transportation of food and other goods.

49.     DoorDash put Legals at risk for claims by customers relating to the quality of its food products.  Legals had no control over DoorDash's operations including (a) how its food products are being cared for during the delivery process; (b) how long it takes for DoorDash to make a delivery; (c) whether DoorDash regularly complied with all applicable health and sanitary codes; or (d) if the deliveries were being made via a bicycle.

50.     Plaintiff would and did not authorize Defendant, or any other entity, to deliver its food products to consumers without the necessary food safety procedures in place especially bicycle service.

51.     DoorDash put Legals at risk for customer complaints and claims of food contamination and/or spoliation, and related illnesses, which would have substantially damaged Legals' reputation and standing in the restaurant business, and could result in irreparable damages and financial loss.

52.     DoorDash's acts and conduct including its knowingly and intentionally (i) misappropriating Legals' Trademarks for its financial gain, (ii) misleading Legals' consumers by using Legals' Restaurant Menus and artificially increasing prices, and (iii) causing damage to

Legals' business reputation are each separate, unfair and deceptive acts and practices as defined by Chapter 93A.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C. §1114

53.     Plaintiff incorporates Paragraphs 1 through 52 of the Complaint as if separately set forth herein.

54.     Plaintiff exclusively owns the Registered Marks, which are valid and enforceable.

55.     Plaintiff has used the Registered Marks in interstate commerce in connection with the advertising and promotion of its restaurant goods and services.

56.     Without authorization, Defendant has used the Registered Marks and Imitation Logos in interstate commerce in connection with its restaurant delivery business.

57.     Upon information and belief, Defendant's unauthorized use of the Registered Marks and Imitation Logos have caused, and will likely continue to cause, confusion, mistake, or deception in the relevant consumer market unless Defendant is permanently enjoined.

58.     Upon information and belief, Defendant's unauthorized use of the Registered Marks and use of Imitation Logos constitute Trademark Infringement is in violation of 15 U.S.C. §§1114 and 1117.

59.     Defendant has acted in bad faith and/or willfully in using the Registered Marks and Imitation Logos in connection with operation of its restaurant food delivery business.

60.     Defendant's infringing acts have caused and will continue to cause Plaintiff to suffer irreparable injuries to its reputation and goodwill.  Plaintiff does not have an adequate remedy at law to recover for this harm, and is therefore entitled to injunctive relief.

7267120
7267120v3

## COUNT II
## FEDERAL UNFAIR COMPETITION 15 U.S.C. §1125(a)

61.     Plaintiff incorporates Paragraphs 1 through 60 of the Complaint as if separately set forth herein.

62.     Upon information and belief, Defendant's unauthorized use of the Registered Marks in connection with its food delivery services constitutes a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to:

  a.     The affiliation, connection or association of the Plaintiff's trademarks with Defendant;

  b.     The origin, sponsorship or approval of Defendant's use of the Plaintiff's trademarks; and

  c.     The nature, characteristics, or qualities of Defendant's services that bear and/or rendering of services in connection with the Plaintiff's trademarks.

63.     The aforesaid acts constitute Federal Unfair Competition in violation of 15 U.S.C. §1125(a), and Plaintiff is entitled to damages in an amount to be assessed and determined at trial plus costs, expenses and attorneys' fees.

## COUNT III
## DILUTION 15 U.S.C. §1125(C)

64.     Plaintiff incorporates Paragraphs 1 through 63 of the Complaint as if separately set forth herein.

65.     Plaintiff is the owner of the Registered Marks, which are famous marks that are inherently distinctive.

7267120
7267120v3

66.     Defendant's unauthorized use of the Registered Marks and use of Imitation Logos in connection with its food delivery services is likely to and did cause dilution by blurring and/or dilution by tarnishment of Plaintiff's famous marks.

67.     Defendant's acts have been willful and in conscious disregard of the trademark rights of Plaintiff.

68.     Defendant's acts were subsequent to the Registered Marks becoming famous.

69.     Because Defendant's unauthorized use of the Registered Marks and Imitation Logos is likely to tarnish the Plaintiff's marks, Plaintiff is entitled to injunctive relief under 15 U.S.C. §1125(c) because Plaintiff has no adequate remedy at law.

### COUNT IV
### UNFAIR COMPETITION CHAPTER 93A

70.     Plaintiff incorporates Paragraphs 1 through 69 of the Complaint as if separately set forth herein.

71.     Defendant's acts, complained of above, constitute unlawful, unfair and/or fraudulent business acts or practices, and were intentional in nature.

72.     Defendant's acts, complained of above, including, without limitation, constitute unfair competition, either directly and/or contributorily, in violation of M.G.L. Ch.93A including harm to consumers by misrepresenting that it is a partner of Legals.

73.     Plaintiff is informed, believes and, therefore, avers that DoorDash was engaged in a trade or commerce in Massachusetts within the meaning of M.G.L. Ch.93A, at the time of the acts and conduct alleged in this Complaint.

74.     Plaintiff is informed, believes and, therefore, avers that the acts and conduct of DoorDash are unfair and deceptive acts and practices as defined in M.G.L. Ch.93A, §§2 and 11.

- 16 -

7267120
7267120v3

75.     Plaintiff is informed, believes and, therefore, avers that the acts and conduct of DoorDash was intentional and calculated, and further that the acts and conducts violated M.G.L. Ch.93A, §§2 and 11.

76.     Plaintiff is informed, believes and, therefore, avers that the acts and conduct of DoorDash constitute a knowing and willful violation of M.G.L. Ch.93A, §§2 and 11.

77.     Plaintiff has suffered, and continues to suffer, damages as a result of the Defendant's violation of M.G.L. Ch.93A.

78.     Plaintiff is entitled to recover damages in an amount to be assessed and determined at trial, to be doubled or trebled, plus interest, costs and attorneys' fees.

## COUNT V
## COMMON-LAW TRADEMARK INFRINGEMENT

79.     Plaintiff incorporates Paragraphs 1 through 78 of the Complaint as if separately set forth herein.

80.     The acts of Defendant, complained of above, constitute trademark infringement in violation of the common law of the Commonwealth of Massachusetts.

81.     Upon information and belief, Defendant's acts have been committed and are being committed with the deliberate purpose and intent of appropriating and trading on Plaintiff's goodwill and reputation.

82.     As a result of the foregoing acts of Defendant, Plaintiff has suffered both actual and statutory damages.

83.     The foregoing acts of Defendant have caused Plaintiff irreparable harm, and, unless enjoined, Defendant's acts as alleged herein will continue to cause Plaintiff irreparable harm, loss and injury.

7267120
7267120v3

84.     Plaintiff is entitled to recover damages in an amount to be assessed and determined at trial plus interest, costs and attorneys' fees.

## COUNT VI
## DOORDASH FOR INJUNCTIVE RELIEF AS TO ASSETS

85.     Plaintiff incorporates Paragraphs 1 through 84 of the Complaint as if separately set forth herein.

86.     DoorDash by their acts and conduct have violated Ch.93A, 15 U.S.C. §1125(a), 15 U.S.C., §1114, and 15 U.S.C. §1125(c).

87.     Plaintiff is informed, believes and, therefore, avers that it has a likelihood of success on the merits of this case, and (i) DoorDash must be permanently enjoined from violating trademarks and from violating Ch.93A as set forth herein, and that injunctive relief, as prayed for herein, is reasonable and necessary.

88.     Plaintiff is informed, believes and therefore avers that unless DoorDash is enjoined and restrained as prayed for herein, it would cause Plaintiff immediate and irreparable harm.

89.     In light of the alleged acts and conduct of DoorDash, Plaintiff is informed, believes and, therefore, avers that unless, DoorDash is restrained as prayed for herein, there is a reasonable likelihood that it will continue such acts and conduct which will cause Legals immediate and irreparable harm.


**WHEREFORE,** Plaintiff, Legal Sea Foods, LLC, requests judgment in its favor and against Defendant, DoorDash Inc., as follows:

1.     That Defendant, DoorDash, Inc., and its agents, servants, employees, successors, assigns and attorneys and any related companies, and all persons in active concert or

participation with one or more of them be permanently enjoined and restrained under Counts I, II and VI seeking injunctive relief from unlawfully using the Registered Marks and/or any mark that is confusingly similar to Plaintiff's, Legal Sea Foods, LLC, Registered Marks;

2.    That Defendant, DoorDash, Inc., and its agents, servants, employees, successors, assigns and attorneys and any related companies, and all persons in active concert or participation with one or more of them be permanently enjoined and restrained under Counts I, II, and VI seeking injunctive relief from its unauthorized delivery of food and goods from Plaintiff's restaurants;

3.    That under Count II of the Complaint, this Court find in favor of Plaintiff, Legal Sea Foods, LLC, and against the Defendant, DoorDash, Inc., and award statutory and/or actual damages plus an award of reasonable attorney fees, costs and expenses, together with pre-judgment interest thereon;

4.    That under Count III of the Complaint, this Court find in favor of Plaintiff, Legal Sea Foods, LLC, and against the Defendant, DoorDash, Inc., and award damages to be determined at trial, which pursuant to 15 U.S.C. §1117 shall be trebled for the willful and intentional conduct of the Defendant, DoorDash, Inc., plus an award of attorneys' fees, costs and expenses;

5.    That under Count IV of the Complaint, this Court find in favor of the Plaintiff, Legal Sea Foods, LLC, and against the Defendant, DoorDash, Inc., the acts to be the willful and intentional violation of Ch.93A, and award damages to be double or trebled in addition to attorneys' fees, costs and expenses;

7267120
7267120v3

6.      That under Count V of the Complaint, this Court find in favor of the Plaintiff,

Legal Sea Foods, LLC, and against the Defendant, DoorDash, Inc., in an amount to be assessed

and determined at trial plus costs and expenses; and

7.      Any such other relief that the circumstances may require and that the Court deems

just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Legal Sea Foods, LLC, hereby demands a jury trial, as provided by Rule 38 of

the Federal Rules of Civil Procedure.

Respectfully Submitted,

LEGAL SEA FOODS, LLC

By its attorney,


*/s/ E. Macey Russell*
E. Macey Russell (BBO#:  542371)
mrussell@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000

Date: March 2, 2016

7267120
7267120v3

## CERTIFICATE OF SERVICE

I, E. Macey Russell, attorney for the Plaintiff, Legal Sea Foods LLC, hereby certify that this document filed through the ECF system will be served electronically to the registered ECF participants as identified on the Notice of Electronic Filing (NEF) and a paper copy will be sent by certified mail, return receipt requested, to those indicated as non-registered participants as follows:

> Tony Xu, CEO
> Jerry Bednyak, Secretary
> DoorDash, Inc.
> 470 Oliver Avenue
> Palo Alto, CA 94306
>
> National Registered Agents, Inc.
> 155 Federal Street
> Suite 700
> Boston, MA 02110

*/s/ E. Macey Russell*

7267120
7267120v3